UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Alexandria Denise Graham** ) | Civil Action No.:_____ 4:24-cv-1106-JD |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| **TransUnion, LLC,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Alexandria Denise Graham, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Alexandria Graham, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On or about May 20, 2015, Plaintiff obtained an auto loan through Santander Consumer USA (hereinafter "Santander").

16. On May 2, 2021, Santander repossessed Plaintiff's car. Plaintiff called Santander and was informed that in order for Plaintiff to get her car back, she would need to pay the entire balance off in full.

17. The total account balance provided by Santander for Plaintiff to pay in order to get her car back was $4,512.48.

18. On May 6, 2021, Plaintiff sent a payment in the amount of $4,512.48, via MoneyGram Payment Systems, Inc., to Santander as full and final payment of the total balance owed.

19. On that same day, May 6, 2021, Plaintiff called Santander to confirm they had received the $4,512.48 payment. During the phone call, Plaintiff was congratulated for paying off her car and informed she would be receiving the title to the car within the next 30 days.

20. On or about August 7, 2021, Plaintiff went online to Credit Karma to check her credit score and discovered that her TransUnion credit score had dropped 85 points to a credit score of 513.

21. On or about August 19, 2021, Plaintiff discovered through Credit Karma that her credit scores for all credit reporting bureaus had dropped. In particular, her TransUnion credit score had dropped another 34 points to 481.

22. On or about May 9, 2022, Plaintiff obtained a copy of her TransUnion credit report

through annualcreditreport.com. Upon review, Plaintiff discovered TransUnion was reporting the Santander account as a charged off account with a past due balance of $785.00.

23. On or about May 9, 2022, Plaintiff sent a written dispute letter to TransUnion ("First Dispute"). In her letter, Plaintiff informed Defendant that the Santander account was not correct, because, after Santander had repossessed Plaintiff's car, Santander provided Plaintiff with a payoff amount of $4,512.48 to satisfy the loan in full and get her car back. In her letter, Plaintiff informed Defendant she had paid the loan off in full, received her car from Santander, and never heard anything further from Santander. Plaintiff informed Defendant the Santander account should be closed with a zero balance and asked Defendant to make the correction immediately.

24. Defendant received Plaintiff's First Dispute on May 13, 2022.

25. On or about May 19, 2022, Defendant sent Plaintiff Investigation Results wherein Defendant informed Plaintiff that the Santander account was verified as accurate and updated. Defendant also provided Plaintiff with a copy of her updated credit report which confirmed that the Santander account was continuing to be reported as an adverse account with a charge-off balance of $5,035.00, and an outstanding past due balance of $785.00.

26. On or about July 6, 2022, Plaintiff sent a second written dispute letter to Defendant ("Second Dispute") in which she stated that she had received TransUnion's Investigation Results and the Santander account was still reporting incorrectly on her credit report. Plaintiff reiterated that the Santander account was not correct and that Santander had repossessed the car and provided her with the amount of $4,512.48 to pay off the loan in full. In her letter, Plaintiff informed Defendant she had paid the loan in full on May 6, 2021,

and Santander had returned her car to her. Plaintiff also enclosed a copy of the May 6, 2021 MoneyGram receipt showing payment of $4,512.48 sent to Santander. Plaintiff again stated she never heard anything from Santander. Plaintiff informed Defendant the Santander account should be closed with a zero balance and asked Defendant to make the correction immediately as it was causing her to be denied credit.

27. Defendant received Plaintiff's Second Dispute on July 11, 2022.

28. On or about July 19, 2022, Defendant sent Plaintiff Investigation Results wherein Defendant informed Plaintiff that the Santander account was updated and that the original charge-off, date closed, rating, and date updated were changed. Defendant also provided Plaintiff with a copy of her updated credit report which showed that the Santander account was continuing to be reported with a charge-off balance of $785.00 and a past due balance of $785.00.

29. On or about July 22, 2022, Plaintiff went online to Credit Karma and discovered that her TransUnion credit score had dropped 55 points to 589 due to "1 late payment."

30. On or about August 6, 2022, Plaintiff checked her TransUnion credit report on Credit Karma. Santander was reporting as "Currently late," "1 Missed."

31. On or about January 6, 2023 Plaintiff sent a third dispute letter to Defendant ("Third Dispute") in which she informed Defendant that she had received Defendant's Investigation Results and they continued to report the Santander account incorrectly. Plaintiff again informed Defendant that Santander had repossessed her car and provided her with the payoff amount of $4,512.48 in order to pay off the loan in full. Plaintiff informed Defendant she paid the $4,512.48 on May 6, 2021 and again provided a copy of

the May 6, 2021 MoneyGram. Plaintiff stated the account should be reporting with a $0.00 balance and as closed. Plaintiff asked Defendant to correct the account immediately as it was causing her to be denied credit.

32.     Defendant received Plaintiff's Third Dispute on January 10, 2023.

33.     On or about January 18, 2023, Defendant forwarded Plaintiff its Investigation Results wherein Defendant stated they investigated the disputed information, and a change was made. However, Defendant continued to report the Santander account with the charge-off amount of $5,579.00, and a past due balance of $785.00.

34.     On November 22, 2023, Plaintiff received an email from Pathlight Property Management declining her rental application for a home in Myrtle Beach, South Carolina. The denial was based on her credit score of 531 as reported by Defendant.

35.     On or about January 4, 2024, Plaintiff obtained a copy of her TransUnion credit report online. Defendant was now reporting the Santander Consumer USA account as "Account paid in Full was a Charge-off" and "Settled-Less than Full Blanc; Paid in Full/Was Charge-Off".

36.     On or about January 5, 2024, Plaintiff sent a fourth written dispute letter to Defendant ("Fourth Dispute") stating that she had obtained a copy of her TransUnion credit report online and it was still reporting the Santander account incorrectly. Plaintiff informed Defendant that Santander had repossessed her car and told her $4,512.48 was the balance due to pay off the car. Plaintiff paid the $4,512.48 on May 6, 2021, via MoneyGram to Santander, and Santander returned her car. Plaintiff again provided a copy of the May 6, 2021 MoneyGram to Defendant. In her Fourth Dispute, Plaintiff stated the remarks on her

TransUnion credit report showing "settled-less than full blnc" was incorrect because the account was actually paid in full. Plaintiff requested Defendant to update her report to remove the incorrect remark and show the account was closed by at least June 2021 when the balance was paid in full. Plaintiff also informed Defendant her credit report contained numerous phone numbers that were not correct and asked Defendant to delete all but the phone number belonging to Plaintiff, which she provided.

37. Defendant received Plaintiff's Fourth Dispute on January 8, 2024.

38. On or about January 26, 2024, Defendant forwarded Plaintiff its Investigation Results wherein Defendant stated the disputed Santander account was verified as accurate. As a result, Defendant continued to report the account on Plaintiff's credit report as "Settled-Less than Full Blanc; Paid in Full/Was Charge-Off". Defendant also continued to report the charge-off amount of $5,579.00. Defendant did delete all phone numbers disputed by Plaintiff.

39. To date, Defendant continues to report the Santander account incorrectly and with conflicting information.

40. Defendant failed to make a reasonable investigation into Plaintiff's disputes.

41. Upon receipt of the ACDV responses, Defendant simply accepted the furnishers' verification of the Account and did not undertake to perform any investigation of its own.

42. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where

the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

43. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

44. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

45. The Plaintiff adopts the averments and allegations of paragraphs 15 through 44 hereinbefore as if fully set forth herein.

46. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable

procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

47. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

48. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, denial of housing, inability to rent an apartment, anxiety, worry, fear of being homeless, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

49. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

50. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

51. The Plaintiff adopts the averments and allegations of paragraphs 15 through 50 hereinbefore as if fully set forth herein.

52. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in

consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

53. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

54. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

55. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, denial of housing, inability to rent an apartment, anxiety, worry, fear of being homeless, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

56. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

57. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

58. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169